# COURT OF COMMON PLEAS OF BALTIMORE CITY.

Filed April 20, 1921.

JOSEPH P. JORDAN
VS.
JAMES & HOLMSTROM PIANO COMPANY, A CORPORATION, ET AL.

*J. Cookman Boyd* and *Thomas J. Mason* for plaintiff.

*Fisher & Fisher* for defendants.

BOND, J.—

Gentlemen, I have gone over this matter to the best of my ability,—and with the help of the reporter, over all the testimony I thought I needed,—and I have come to the conclusion that these prayers must be granted. And I would like to state my reasons because there is room for argument; and I have been assisted by some very thorough argument in this case.

Of course the question is not whether the plaintiff was or was not guilty of the criminal charges made against him in these indictments in the Criminal Courts; the question is not whether or not he owed any money to the defendants. That is, it is not the question, except incidentally. The question is this: The jury is asked to decide in this case whether the defendants improperly instigated or promoted these charges in the indictment. Now the burden is upon the plaintiff, of course, when he sues in this court, to show that the defendant did improperly instigate or promote those charges. After the plaintiff's own testimony is finished defendants object and say that on that testimony alone it appears that there was good reason, good cause for this prosecution upon the facts as they appeared to the defendants at that time, that therefore on the facts produced by the plaintiff himself it is clear, suffi-

ciently clear, that there was reasonable cause for the prosecution.

Of course the law does not prohibit a private individual starting or aiding in a criminal prosecution. On the contrary it is necessary that that should be done, and it is proper so long as it is done on sufficient ground. And people who do start such prosecutions are not answerable if, as the Court of Appeals say in the appearance of things before them there is "such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the party accused to be guilty."

So the question here is whether there was such reasonable ground of suspicion in the circumstances then existing and appearing to the defendant, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty.

Now, as has been stated by the Court of Appeals many times (and that was the rule I had in mind when I started in on this case), it is for the jury to say what are the facts in the case, the court should instruct them what facts would show reasonable cause or the lack of it. My attention is called to the fact that the Court of Appeals has also said that when the facts are clear, as when they are admitted by the plaintiff, so that there is no debate on those facts, then the burden is on the court to say, in the first instance, if the defendants request it whether those facts do show on behalf of the plaintiff that the prosecution was instigated or promoted without probable cause, as "probable cause" is defined in the decision of the Court of Appeals from which I have quoted.

That means, of course, probable cause for instigating the particular charges in these indictments, and those are, first, larceny of three pianos, each of the value of $297, then, in the same indictment in the second count for the embezzlement of $650, and then there is an indictment for just the embezzlement of $174.50. Now the defendants urge that on the facts we have to accept it appears that the plaintiff sold pianos belonging to the defendants and pocketed the proceeds without accounting, and in fact reporting them to be in stock and pocketed the rentals of certain pianos without accounting for them. Now, one point raised was whether or not if that were under the arrangement between the parties in this case it would constitute larceny or embezzlement. Without debating that question, gentlemen, I think it would be technical larceny or embezzlement.

Now, then I have to consider the appearance of things before the defendants at that time. In this contract it appears that the business arrangement between the parties was this: These pianos from time to time were consigned to be sold to the plaintiff on account of the consignor. They remained the consignor's pianos to be sold for them strictly under certain regulations and directions contained in this agreement, and it seems in most of their dealings pianos were sold or rented in accordance with these terms. The money is all to be turned over to the defendants or deposited to their separate account and they are in turn to pay compensation as stipulated here to the plaintiff. Now the plaintiff testifies himself that there were at least three pianos which had been sold, more or less, early in the year 1919, the proceeds of which had been taken over by the plaintiff himself for which no accounting was made until investigation was started by the defendant. That is the Lightfoot piano, the Zieman piano and the Ford piano. In addition it seems that the Longest piano was not reported at all until the account of collections of August 1st, in a different hand, at the bottom of the bill, reciting that the Longest piano, which was apparently disposed of in February, 1919, and due on August 1st, 1919, that there was a new account and $50 had been collected on it. That is a new and strange hand and I do not think the evidence covered that point. I do not know in fact just what that means. At any rate up to that time there was no report and it seems as a matter of fact on the testimony produced before us, that the Longest piano had been exchanged, or rather a sale had been made for $65 and the return piano exchanged. These pianos were not only sold, but they were reported in stock on October 7th. There had been one of them at least sold as long ago as May. And in the current reports of money received no mention was made of these, although several hundred dollars had been received and appropriated by the plaintiff for his own account. The statements of account altogether omit the Lightfoot, Zieman or

Ford pianos. Upon investigation, of course, it is obvious that before the indictment this was discovered, because the indictment is based upon those facts. I think Mr. Boyd is quite right in arguing, as he does in effect, that we have to consider there also the explanations made by the plaintiff and his assistants to the investigator from New York, because of course that is an element in making up the appearance of things by which the defendants had to be governed. I have come to the conclusion there was nothing in those which would relieve that situation. It is rather an explanation of loose methods. On top of that there seems to have been a reluctance or refusal to pay any of the money received, the $174 which had been received long before and converted to the plaintiff's account and admitted by him in October as not paid, but as being held back, that $174 had never been reported before, but on the contrary it had been omitted from the report.

Now, gentlemen, following out the directions which I conceive that I have received from the Court of Appeals, I find that on those facts, however innocent the plaintiff may have been in reality the defendants were justified in thinking there was ground for prosecution in that case and that is all we have to decide. Of course, as I say, gentlemen, a private individual is not prohibited from starting prosecution when the appearance sufficiently justify it. So that the defendant, as I see it, has the law with him and you are instructed that when you are called upon for a verdict you must render your verdict in favor of both defendants.